# 14-473(L)

**14-854(CON)**

*To Be Argued By*:
RUSSELL CAPONE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

### Docket Nos. 14-473(L), 14-854(CON)

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

JUAN CARLOS VIERA, also known as Gordo, also known as Jon Jon,
JULIO DOMINGUEZ, also known as Sealed Defendant 3, CARLOS
ALBERTO PADRON, also known as Sealed Defendant 4, also known
as Lindo, also known as Carlos Alberto Padron Pena, JUAN
MANUEL TAVAREZ PADILLA, also known as Sealed Defendant 5,
JUAN TAVAREZ, also known as Sealed Defendant 6, also known as

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

### BRIEF FOR THE UNITED STATES OF AMERICA

PREET BHARARA,
*United States Attorney for the*
*Southern District of New York,*
*Attorney for the United States*
*of America.*

RUSSELL CAPONE,
BRIAN A. JACOBS,
*Assistant United States Attorneys,*
*Of Counsel.*

Patron, also known as Jefe, also known as Nene, AURA CATALINA TAVAREZ, also known as Sealed Defendant 7, also known as La Patrona, also known as Jefa, EDWIN M. TAVAREZ, also known as Sealed Defendant 8, also known as Junior, also known as Chepe, ISRAEL TACHER, also known as Sealed Defendant 10, also known as Capi, also known as El Judio, ROBERTO TACHER, also known as Sealed Defendant 10, also known as Robertico, VANESSA ROSARIO, also known as Sealed Defendant 11, ELIGIO ARMAS, also known as Sealed Defendant 12, EDUARDO DIAZ, also known as Sealed Defendant 13, CARLOS PERALTA, also known as Sealed Defendant 14, also known as Platano, also known as Chino, JOSELITO PERALTA, also known as Sealed Defendant 15, also known as Piki, JUAN CARLOS PERALTA, also known as Sealed Defendant 16, HANSER OLIVO LIRANZO, also known as Sealed Defendant 17, KELVIN MANUEL MARTINEZ TAVERAS, also known as Sealed Defendant 18, GLENN LUIS CABRERA, also known as Sealed Defendant 19, also known as Luigi, FARY R. CABA PADILLA, also known as Sealed Defendant 20, MIGUEL PADILLA, also known as Sealed Defendant 21, AMERICO LUIS GARCIA DOMINGUEZ, also known as Sealed Defendant 22, WILFRED RODRIGUEZ, also known as Sealed Defendant 23, also known as Wilson, ALEX JUSTO, also known as Sealed Defendant 25, YOEL FERNANDEZ RIVERO, also known as Sealed Defendant 26, also known as Mango, AMAURIS A. ROSARIO, also known as Sealed Defendant 27, also known as Maro, also known as Mauro, JACQUELINE JIMENEZ, also known as Sealed Defendant 28, also known as Morena, LUIS SANTANA, also known as Sealed Defendant 29, BAYOHAN DIAZ, also known as Sealed Defendant 30, also known as Bayo, also known as Boyohan Diaz, ARMANDO GARCIA, also known as Sealed Defendant 32, SERGIO NOVO, also known as Sealed Defendant 33, LAZARO OSPINA, also known as Sealed Defendant 34, BRENDA SANTOS, also known as Sealed Defendant 35, IRA KARP, also known as Sealed Defendant 36, LUIS ABREU, Sealed Defendant 37, JOEL GABRIEL CASADO, also known as Sealed Defendant 38, also known as Jeol Casado Castillo, JOSE FELIPE, also known as Sealed Defendant 39, also known as Gino, BENITO DURAN, also known as Sealed Defendant 40, also known as Beano, ARELIS LEE, also known as Sealed Defendant 41, MILAGROS ACEVEDO, also known as Sealed Defendant 42, ALEX ORIA, JOE H. NELSON, KENNETH NELSON, CONRADO VAZQUEZ, ABEL GONZALEZ, also known as Abelito, EFREN RUIZ, also known as Socio, JOSE MANUEL DOMINGUEZ, also known as Sealed Defendant 2, also known as Flaco,

*Defendants*,

PAULINO CAYETANO, also known as Sealed Defendant 31, also known as Cayetano, JOSE RAMON GONZALEZ, also known as Sealed Defendant 24, also known as Chamon, FELIPE WATED,

*Defendants-Appellants.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .   1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    A.   The Criminal Conduct . . . . . . . . . . . . . . .   3

        1.   Overview. . . . . . . . . . . . . . . . . . . . . . . .   3

        2.   Paulino's Criminal Conduct . . . . . . . . .   5

        3.   Wated's Criminal Conduct . . . . . . . . . .   5

    B.   The Guilty Pleas . . . . . . . . . . . . . . . . . . . . .   6

        1.   Paulino's Guilty Plea . . . . . . . . . . . . . .   6

        2.   Wated's Guilty Plea and Cooperation Agreement . . . . . . . . . . . . . . . . . . . . . . .   7

    C.   The Sentencings . . . . . . . . . . . . . . . . . . . . .   7

ARGUMENT:

POINT I—Wated's Sentence Was Procedurally and Substantively Reasonable. . . . . . . . . . . . . . . . . .   8

    A.   Relevant Facts . . . . . . . . . . . . . . . . . . . . . .   8

    B.   Applicable Law . . . . . . . . . . . . . . . . . . . . .   13

    C.   Discussion . . . . . . . . . . . . . . . . . . . . . . . . .   15

        1.   Wated's Sentence Was Procedurally Reasonable . . . . . . . . . . . . . . . . . . . . . .   15

ii

PAGE

2. Wated's Sentence Was Substantively Reasonable . . . . . . . . . . . . . . . . . . . . . . . 22

POINT II—Judge Cote Properly Included the Obstruction of Justice Enhancement in Paulino's Guidelines Calculation . . . . . . . . . . . 25

A. Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . 25

B. Applicable Law . . . . . . . . . . . . . . . . . . . . . . . 28

C. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . 32

POINT III—Paulino's Claims of Ineffective Assistance of Counsel Are Not Ripe for Consideration . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

## TABLE OF AUTHORITIES

*Cases*:

*Gall* v. *United States*,
552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Massaro* v. *United States*,
538 U.S. 500 (2003) . . . . . . . . . . . . . . . . . . . . . . . 36

*Puckett* v. *United States*,
556 U.S. 129 (2009) . . . . . . . . . . . . . . . . . . . . . . . 15

*United States* v. *Abuhouran*,
162 F.3d 230 (3d Cir. 1998) . . . . . . . . . . . . . . 33, 35

iii

PAGE

*United States* v. *Aponte*,
　31 F.3d 86 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . 31

*United States* v. *Banks*,
　464 F.3d 184 (2d Cir. 2006) . . . . . . . . . . . . . . 13, 18

*United States* v. *Booker*,
　543 U.S. 220 (2005). . . . . . . . . . . . . . . . . . . . . . . . 16

*United States* v. *Carty*,
　264 F.3d 191 (2d Cir. 2001) . . . . . . . . . . . . . . . . . 30

*United States* v. *Cassiliano*,
　137 F.3d 742 (2d Cir. 1998) . . . . . . . . . . . . . . 28, 31

*United States* v. *Cavera*,
　550 F.3d 180 (2d Cir. 2008) . . . . . . . . . . . . . . 13, 14

*United States* v. *Defeo*,
　36 F.3d 272 (2d Cir. 1994) . . . . . . . . . . . 30, 33, 34

*United States* v. *Doe*,
　996 F.2d 606 (2d Cir. 1993) . . . . . . . . . . . . . . . . . 16

*United States* v. *Espinoza*,
　514 F.3d 209 (2d Cir. 2008) . . . . . . . . . . . . . . . . . 20

*United States* v. *Feldman*,
　647 F.3d 450 (2d Cir. 2011) . . . . . . . . . . . . . . 30, 31

*United States* v. *Feliz*,
　286 F.3d 118 (2d Cir. 2002) . . . . . . . . . . . . . . . . . 31

*United States* v. *Fernandez*,
　127 F.3d 277 (2d Cir. 1997) . . . . . . . . . . . . . . 28, 29

*United States* v. *Fernandez*,
　443 F.3d 19 (2d Cir. 2006) . . . . . . . . . . . 13, 23, 24

iv

PAGE

*United States* v. *Frias*,
   521 F.3d 229 (2d Cir. 2008) . . . . . . . . . . . . . . . . . 23

*United States* v. *Goffi*,
   446 F.3d 319 (2d Cir. 2006) . . . . . . . . . . . . . . . . . 20

*United States* v. *Irabor*,
   894 F.2d 554 (2d Cir. 1990) . . . . . . . . . . . . . . 30, 33

*United States* v. *Irving*,
   554 F.3d 64 (2d Cir. 2009) . . . . . . . . . . . . . . . . . 24

*United States* v. *Johnson*,
   567 F.3d 40 (2d Cir. 2009) . . . . . . . . . . . . . . . . . 16

*United States* v. *Keats*,
   937 F.2d 58 (2d Cir. 1991) . . . . . . . . . . . . . . . . . 30

*United States* v. *Khedr*,
   343 F.3d 96 (2d Cir. 2003) . . . . . . . . . . . . . . . . . 36

*United States* v. *Labella-Szuba*,
   92 F.3d 136 (2d Cir. 1996) . . . . . . . . . . . . . . 30, 31

*United States* v. *Lawal*,
   17 F.3d 560 (2d Cir. 1994) . . . . . . . . . . . . . . . . . 16

*United States* v. *Lincecum*,
   220 F.3d 77 (2d Cir. 2000) . . . . . . . . . . . . . . . . . 29

*United States* v. *Loeb*,
   45 F.3d 719 (2d Cir. 1995) . . . . . . . . . . . . . . . . . 30

*United States* v. *Marcus*,
   560 U.S. 258 (2010) . . . . . . . . . . . . . . . . . . . . . . . 15

*United States* v. *McKay*,
   183 F.3d 89 (2d Cir. 1999) . . . . . . . . . . . . . . 28, 29

v

PAGE

*United States* v. *Moe*,
    65 F.3d 245 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . 16

*United States* v. *Morillo*,
    540 F. App'x 63 (2d Cir. 2013) . . . . . . . . . . . . . . 17

*United States* v. *Morris*,
    350 F.3d 32 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . 36

*United States* v. *Palma*,
    560 F. App'x 94 (2d Cir. 2014) . . . . . . . . . . . . . . 21

*United States* v. *Pope*,
    554 F.3d 240 (2d Cir. 2009) . . . . . . . . . . . . . . 14, 23

*United States* v. *Reed*,
    88 F.3d 174 (2d Cir. 1996) . . . . . . . . . . . . . . 31, 32

*United States* v. *Reyes*,
    308 F. App'x 517 (2d Cir. 2009) . . . . . . . . . . . . . 16

*United States* v. *Richardson*,
    521 F.3d 149 (2d Cir. 2008) . . . . . . . . . . . . . 20, 21

*United States* v. *Rigas*,
    583 F.3d 108 (2d Cir. 2009) . . . . . . . . . . . . . 14, 24

*United States* v. *Savoca*,
    596 F.3d 154 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . 28

*United States* v. *Sisti*,
    91 F.3d 305 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . 19

*United States* v. *Stinson*,
    465 F.3d 113 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . 16

*United States* v. *Ukrainsky*,
    — F. App'x—, 2015 WL 525989 (2d Cir. 2015) . . 24

vi

PAGE

*United States* v. *Valdez,*
    426 F.3d 178 (2d Cir. 2005) . . . . . . . . . . . . . . . . . 16

*United States* v. *Verkhoglyad,*
    516 F.3d 122 (2d Cir. 2008) . . . . . . . . . . . . . . . . . 18

*United States* v. *Wagner-Dano,*
    679 F.3d 83 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . 15

*United States* v. *Woodard,*
    239 F.3d 159 (2d Cir. 2001) . . . . . . . . . . . . . 31, 34

*United States* v. *Zagari,*
    111 F.3d 307 (2d Cir. 1997) . . . . . . . . . . . . . . . . . 31

*Statutes, Rules & Other Authorities*:

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

18 U.S.C. § 3553(e) . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

U.S.S.G. § 3C1.1 . . . . . . . . . . . . . . . . . . . 26, 29, 30, 33

U.S.S.G. § 7B1.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
## Docket Nos. 14-473(L), 14-854(CON)

────────────

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

JUAN CARLOS VIERA, also known as Gordo, also known
as Jon Jon, *et al.*,

*Defendants,*

PAULINO CAYETANO, also known as Sealed Defendant
31, also known as Cayetano, JOSE RAMON GONZALEZ,
also known as Sealed Defendant 24, also known as
Chamon, FELIPE WATED,

*Defendants-Appellants.*

────────────

## BRIEF FOR THE UNITED STATES OF AMERICA

────────────

### Preliminary Statement

Cayetano Paulino appeals from a judgment of
conviction entered on January 28, 2014, in the United
States District Court for the Southern District of New
York, by the Honorable Denise L. Cote, United States
District Judge, following Paulino's guilty plea. Felipe
Wated appeals from a judgment of conviction entered

on March 17, 2014, in the United States District Court for the Southern District of New York, following Wated's guilty plea before Judge Cote.[1]

Superseding Indictment S2 11 Cr. 1072 (DLC) (the "S2 Indictment") was filed on August 14, 2012, charging 48 defendants in six counts, three of which charged Paulino. Count One charged Paulino with conspiracy to commit mail, wire, and healthcare fraud, in violation of Title 18, United States Code, Section 1349. Count Two charged Paulino with conspiracy to engage in the unlawful wholesale distribution of prescription drugs, in violation of Title 18, United States Code, Section 371. Count Five charged Paulino with conspiracy to distribute and to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 846. On July 10, 2013, Paulino pleaded guilty to Counts Two and Five of the S2 Indictment before Judge Cote.

Superseding Information S4 11 Cr. 1072 (DLC) (the "S4 Information") was filed on February 04,

―――――――――

[1] This Court's official caption for this case erroneously refers to Cayetano Paulino as "Paulino Cayetano." Although the District Court's docket also refers to "Paulino Cayetano," both the superseding information to which Paulino pleaded guilty and the judgment of conviction correctly refer to "Cayetano Paulino." In addition, the official caption lists a third defendant-appellant, Jose Ramon Gonzalez, but in an order dated January 12, 2015, this Court granted Gonzalez's motion to withdraw his appeal.

3

2013, in three counts. Count One charged Wated with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h). Count Two charged Wated with conspiracy to commit mail, wire, and healthcare fraud, in violation of Title 18, United States Code, Section 1349. Count Three charged Wated with bank fraud, in violation of Title 18, United States Code, Section 1344. On February 4, 2014, Wated pleaded guilty to Counts One, Two, and Three of the S4 Information before Judge Cote.

On January 24, 2014, Judge Cote sentenced Paulino to an aggregate term of 78 months' imprisonment, to be followed by three years' supervised release, imposed a $200 mandatory special assessment, and ordered Paulino to pay $400,000 in restitution.

On March 14, 2014, Judge Cote sentenced Wated to an aggregate term of 60 months' imprisonment, to be followed by three years' supervised release, imposed a $300 mandatory special assessment, and ordered Wated to pay $4,000,000 in restitution.

Paulino and Wated are currently serving their sentences.

## Statement of Facts

## A. The Criminal Conduct

### 1. Overview

Paulino and Wated participated in a vast scheme involving the diversion and trafficking of hundreds of millions of dollars' worth of second-hand prescription drugs, including HIV medications, which had been

4

previously dispensed to Medicaid recipients in the New York City area. (Paulino PSR ¶ 64; Wated PSR ¶ 56).[2] The lowest level participants in the scheme (the "Beneficiaries") filled prescriptions for months-long supplies of drugs at pharmacies throughout the New York City area, using Medicaid benefits to pay the cost. (Paulino PSR ¶ 65; Wated PSR ¶ 57). The Beneficiaries sold their bottles of drugs to other participants in the scheme—the "Collectors"—on street corners and in bodegas around the City. (Paulino PSR ¶ 65; Wated PSR ¶ 57). The Collectors then sold the bottles of drugs to still other participants in the scheme—the "Aggregators"—who often sold the drugs again to other Aggregators higher up in the scheme. (Paulino PSR ¶ 65; Wated PSR ¶ 57). After the drugs reached the highest-level Aggregators, those Aggregators resold the drugs into distribution channels that led to pharmacies, where the drugs were dispensed to new and unsuspecting customers throughout the United States. (Paulino PSR ¶¶ 65-66; Wated PSR ¶¶ 57-58).

In order to make the bottles appear to be new, and to conceal their second-hand nature, the Collectors and Aggregators used lighter fluid and other poten-

----------

[2]  "[Name] PSR" refers to the Presentence Investigation Report prepared by the United States Probation Office (the "Probation Office") in connection with the named defendant's sentencing; "[Name] Br." refers to the named defendant's brief on appeal; and "[Name] A." refers to the named defendant's appendix on appeal.

5

tially hazardous chemicals to dissolve the adhesive on the labels bearing the original patients' names and pharmacy information, and then removed those labels from the bottles. (Paulino PSR ¶ 67; Wated PSR ¶ 59).

## 2. Paulino's Criminal Conduct

Paulino worked as a Collector of prescription drugs. (Paulino PSR ¶¶ 95, 104; A. 45-47). Specifically, Paulino purchased prescription drugs on the street and participated in cleaning them by removing the labels. (Paulino PSR ¶ 104; A. 45-47). Paulino then supplied those drugs to an Aggregator named Luis Santana. (Paulino PSR ¶ 95). In addition to HIV and other non-controlled prescription medication, Paulino also purchased and re-sold medication containing oxycodone. (Paulino PSR ¶ 106; A. 48). On March 14, 2012, while in the Bronx, Paulino was found to be in possession of approximately 2,000 bottles of HIV and other prescription medication with a Medicaid reimbursement value of approximately $611,000. (Paulino PSR ¶ 104).

## 3. Wated's Criminal Conduct

Wated operated a company called Platabancol that transported produce. (Wated PSR ¶ 108). Wated's niece was engaged to Carlos Lago, who was involved in purchasing and redistributing diverted prescription drugs. (Wated PSR ¶ 108). Wated agreed to use the Platabancol bank account to launder Lago's prescription drug proceeds. (Wated PSR ¶ 108). For example, when co-defendant Alex Oria, one of the leaders of the scheme, purchased drugs from Lago,

6

Oria paid by wiring money to Platabancol. (Wated PSR ¶ 108). Wated then wired the money to another co-conspirator's bank account, before withdrawing it and paying either Lago or Lago's prescription drug supplier, co-defendant Carlos Peralta. (Wated PSR ¶ 108). Wated also attended prescription drug transactions between Lago and Peralta. (Wated PSR ¶ 108). In all, Wated laundered approximately $4 million in prescription drug proceeds. (Wated PSR ¶ 108).

## B. The Guilty Pleas

### 1. Paulino's Guilty Plea

On July 10, 2013, in a proceeding the sufficiency of which has not been challenged on appeal, Paulino pleaded guilty to Counts Two and Five of the S2 Indictment pursuant to a plea agreement. (Paulino PSR ¶ 17). The plea agreement contained a stipulation between the parties as to the application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") to Paulino's offenses. The parties calculated Paulino's offense level to be 23, as follows: (a) his base offense level for Count Two was 6, pursuant to U.S.S.G. § 2B1.1; (b) his offense level was increased by 14 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(C), because the amount of loss was greater than $400,000 but no more than $1,000,000; (c) his offense level was increased 2 levels, pursuant to U.S.S.G. § 2B1.1(b)(14), because the offense involved the conscious or reckless risk of death or serious bodily injury; (d) his base offense level for Count Five was 26, because the offense involved the equivalent of more

than 100 but no more than 400 kilograms of marijuana; (e) his offense level for Count Five became his overall offense level because it was higher than his offense level for Count Two; and (f) his overall offense level was decreased three levels, pursuant to U.S.S.G. § 3E1.1, because he timely accepted responsibility. (Paulino PSR ¶ 18). The parties further stipulated that Paulino fell within Criminal History Category I, and that his Guidelines range was therefore 46 to 57 months' imprisonment. (Paulino PSR ¶ 18).

### 2. Wated's Guilty Plea and Cooperation Agreement

On February 4, 2013, in a proceeding the sufficiency of which has not been challenged on appeal, Wated pleaded guilty to the three counts of the S4 Information pursuant to a cooperation agreement with the Government. (Wated PSR ¶ 8). Wated's cooperation agreement did not include any discussion of how the Guidelines would apply to his offense. (Wated A. 15-20).

### C. The Sentencings

On January 24, 2014, Judge Cote sentenced Paulino principally to an aggregate term of 78 months' imprisonment. On March 14, 2014, Judge Cote sentenced Wated principally to an aggregate term of 60 months' imprisonment.

8

## A R G U M E N T

### POINT I

### Wated's Sentence Was Procedurally and Substantively Reasonable

Wated challenges his sentence as both procedurally and substantively unreasonable, arguing principally that Judge Cote should have given more weight to his cooperation, and less weight to his criminal history. These arguments are unavailing. Wated failed to raise any challenge to the procedural reasonableness of his sentence below, and therefore his procedural challenges are reviewed solely for plain error. Judge Cote did not commit any procedural error, however, much less plain error. Wated's sentence of 60 months' imprisonment—which was 27 months below the low end of the applicable Guidelines range—was also substantively reasonable, as it was well within the broad range of permissible sentences. Accordingly, it should not be disturbed.

### A.  Relevant Facts

In advance of Wated's sentencing, the Probation Office prepared a Presentence Report. The Probation Office concluded the Wated's total offense level was 28, calculated as follows: (a) his base offense level was 7, pursuant to U.S.S.G. § 2B1.1(a)(1); (b) his offense level was increased by 18 levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(J), because Wated laundered $4 million in prescription drug proceeds; (c) his offense level was increased 2 levels, pursuant to U.S.S.G. § 2B1.1(b)(7), because Wated was convicted

9

of a federal health care offense involving a Government health care program, and the loss was more than $1 million but less than $7 million; (d) his offense level was increased by 2 levels, pursuant to U.S.S.G. § 2B1.1(b)(15), because the offense involved the conscious or reckless risk of death or bodily injury; (e) his offense level was increased by 2 levels, pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because Wated was convicted under 18 U.S.C. § 1956; and (f) his offense level was decreased by 3 levels, pursuant to U.S.S.G. § 3E1.1, for his timely acceptance of responsibility. (Wated PSR ¶¶ 133-57). The Probation Office further determined that Wated fell within Criminal History Category II, resulting in a Guidelines range of 87 to 108 months' imprisonment. (Wated PSR ¶¶ 177, 216).

The Probation Office recommended a below-Guidelines sentence of 48 months' imprisonment. (Wated PSR at 50, Sentencing Recommendation). In making this recommendation, the Probation Office noted that Wated had "received lighter sentences on two occasions in the past as a result of his cooperation with the Government," and that the fact Wated had "transgressed a third time, by laundering $4 million in illegal prescription drug proceeds" gave rise to a "concern that the defendant does not take the law seriously." (Wated PSR at 51, Sentencing Recommendation).

In its sentencing submission, the Government advised Judge Cote that Wated had provided substantial assistance in the investigation and prosecution of others, and requested that he be sentenced in light of

10

the factors set forth in Section 5K1.1 of the Guide-
lines. The Government recounted how Wated agreed
to cooperate in February 2012, without being
charged, and how Wated was subsequently kid-
napped and detained by his co-conspirators in Co-
lombia. (Wated A. 69-70). The Government also ex-
plained how Wated's cooperation encompassed
(i) providing information about and making record-
ings against Lago and other members of the extortion
scheme; (ii) providing information about the money
laundering aspect of the prescription drug diversion
scheme; (iii) providing information that proved criti-
cal in charging four additional members of the pre-
scription drug conspiracy; and (iv) preparing to testi-
fy at trial against a co-defendant, who ultimately
pleaded guilty shortly before trial. (Wated A. 69-76).
In his own sentencing submission, Wated sought a
sentence of probation based principally on his cooper-
ation. (Wated A. 67).

On March 14, 2014, the parties appeared before
Judge Cote for sentencing. At the outset, Judge Cote
confirmed that she had received and reviewed the
parties' sentencing submissions and the Presentence
Report. (Wated A. 78-79). After confirming that the
parties had no objection to the Guidelines calculation
in the Presentence Report, Judge Cote adopted the
calculation reflected in the report—which resulted in
a Guidelines range of 87 to 108 months—as her own.
(Wated A. 80). Judge Cote then explained that "there
is a very problematic part of this sentence," which
was the "risk" that Wated "believe[d] that future
criminal conduct can be dealt with through a pattern
of cooperation." (Wated A. 80). Judge Cote noted that

11

"[t]he probation department is recommending a term of imprisonment of 48 months," and that the "guidelines range is 87 to 108 months," but stated that "I'm unlikely to follow the probation department's recommendation here." (Wated A. 81). Then Judge Cote heard from the Government, Wated's counsel, and Wated himself. (Wated A. 81-92).

In its brief remarks, the Government highlighted how Wated had assisted the Government, among other ways, by helping the Government to trace the movement of funds in connection with the charged conspiracy. (Wated A. 82). The Government also requested that Judge Cote sentence Wated in light of the factors set forth in Section 5K1.1 of the Guidelines. (Wated A. 91).

Wated's counsel, in his remarks, focused initially on how Wated was kidnapped in Colombia, which counsel explained had had "an understandably traumatic effect on Mr. Wated's wife and family." (Wated A. 85). Counsel stated that he understood "that this Court is rightfully troubled by the fact that Mr. Wated has, in the past, committed crimes, cooperated with the government and [been] given the benefit of that cooperation, and then committed crimes again in the future." (Wated A. 85). "[W]e can't make th[at] past go away," counsel acknowledged, but argued that "Mr. Wated is now 58 years of age," is "remarried," has "two children to support," and "has lived a completely blemish-free law abiding life" in "the business" of "long-distance trucking" since being approached in this case. (Wated A. 85). On the basis of

these factors, counsel requested a sentence with no jail time. (Wated A. 89).

Wated himself then addressed Judge Cote, stating that he regretted the crimes he committed and promised to "do my best" if given "one more chance." (Wated A. 91). Wated also said he feared his wife and children would return to Colombia if Wated was imprisoned, where, counsel explained, Wated feared for their safety. (Wated A. 91).

After Wated spoke, Judge Cote took a recess. (Wated A. 92). When the sentencing resumed, Judge Cote began by pointing out that Wated had "a very serious criminal record in terms of the pattern" of "violations of the law." (Wated A. 92). Specifically, Judge Cote explained, "[w]e have the arrest in 1990 in connection with various drugs and as I understand it, [Wated] cooperated at that time and received a sentence of probation"; "[t]hen we have [the] 1999 charges in connection with counterfeiting, and it's my understanding that there was cooperation at that time, and at that time a 20-month term of imprisonment"; "[t]hen we have this criminal conduct, and cooperation at this time." (Wated A. 92). "I am going to give you some credit for the assistance you gave the government," Judge Cote stated, but at the same time she said, "I'm also going to give you a very substantial term of imprisonment" because "[t]he pattern must stop. Cooperation with the government is not a 'get out of jail free card.' The way to stay out of jail is to stop committing crimes." (Wated A. 92).

Based on these considerations, Judge Cote sentenced Wated principally to an aggregate term of 60

13

months' imprisonment. (Wated A. 92). At the close of the proceeding, Judge Cote inquired whether either counsel had "any legal reason why I cannot impose the sentence I described as stated," and counsel indicated that they did not. (Wated A. 93-94).

## B. Applicable Law

Appellate review of a district court's sentence "encompasses two components: procedural review and substantive review." *United States* v. *Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). A district court "commits procedural error where it fails to calculate the Guidelines range (unless the omission of the calculation is justified . . .), makes a mistake in its Guidelines calculation, . . . treats the Guidelines as mandatory[,] . . . does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact." *Id.* at 190.

Although district courts are required "to 'consider' [the Section 3553(a)] factors" in imposing sentence, there is "no requirement that the court mention the required factors, much less explain how each factor affected the court's decision." *United States* v. *Banks*, 464 F.3d 184, 190 (2d Cir. 2006). Thus, this Court "entertain[s] a strong presumption" that a sentencing judge has "faithfully discharged" his or her duty to consider the Section 3553(a) factors and the arguments bearing on those factors "in the absence of record evidence suggesting otherwise." *United States* v. *Fernandez*, 443 F.3d 19, 29-30 (2d Cir. 2006).

If the Court determines that there was no procedural error, it "should then consider the substantive

14

reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall* v. *United States*, 552 U.S. 38, 51 (2007). In conducting such review, this Court must "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *United States* v. *Cavera*, 550 F.3d at 190. This Court cannot "substitute [its] own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case," and should "set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Id.* at 189 (emphasis in original) (internal quotation marks omitted).

Generally, if "the ultimate sentence is reasonable and the sentencing judge did not commit procedural error in imposing that sentence, [this Court] will not second guess the weight (or lack thereof) that the judge accorded to a given factor or to a specific argument made pursuant to that factor." *United States* v. *Pope*, 554 F.3d 240, 246-47 (2d Cir. 2009) (internal quotation marks omitted). At bottom, the substantive reasonableness standard "provide[s] a backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States* v. *Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

15

## C. Discussion

### 1. Wated's Sentence Was Procedurally Reasonable

In challenging the procedural reasonableness of his sentence, Wated highlights a series of purported errors, none of which warrants a finding of procedural unreasonableness. Because Wated did not preserve these claims below, they are subject to review solely for plain error. *See United States* v. *Wagner-Dano*, 679 F.3d 83, 89 (2d Cir. 2012). To show plain error, an appellant must establish that "(1) there is an 'error'; (2) the error is 'clear and obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States* v. *Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett* v. *United States*, 556 U.S. 129, 135 (2009)). Wated cannot demonstrate any error, let alone meet this stringent standard.

To start, Wated repeatedly asserts that Judge Cote committed procedural error by giving only "some credit" to the Government's request that Wated be sentenced pursuant to Section 5K1.1 of the Guidelines. (Wated Br. 23). Indeed, the principal basis for Wated's appeal is his disagreement with the extent of the departure Judge Code granted under Section 5K1.1. (*See, e.g.*, Wated Br. 1 (asking "this Court to vacate his sentence and remand for resentencing to a

16

lesser term after reconsideration of the extremely
valuable assistance he provided to the government")).
But just as the denial of a downward departure mo-
tion is not subject to appellate review unless "'a sen-
tencing court misapprehended the scope of its author-
ity to depart or the sentence was otherwise illegal,'"
*United States* v. *Stinson*, 465 F.3d 113, 114 (2d Cir.
2006) (quoting *United States* v. *Valdez*, 426 F.3d 178,
184 (2d Cir. 2005)), a defendant cannot appeal the ex-
tent of a departure granted under Section 5K1.1, *see
United States* v. *Reyes*, 308 F. App'x 517, 518 (2d Cir.
2009); *United States* v. *Moe*, 65 F.3d 245, 251 (2d Cir.
1995); *United States* v. *Lawal*, 17 F.3d 560, 562 (2d
Cir. 1994); *United States* v. *Doe*, 996 F.2d 606, 607
(2d Cir. 1993); *see also United States* v. *Johnson*, 567
F.3d 40, 52 (2d Cir. 2009) ("a district court alone may
determine what effect to give a 5K1.1 letter").[3]

---

[3] Wated acknowledges that "there was a time
when a defendant was not considered eligible for ap-
pellate review of the reasonableness or extent of a
downward departure," but argues that "that has not
been the case since" the Supreme Court decided *Unit-
ed States* v. *Booker*, 543 U.S. 220 (2005). (Wated Br.
27 n.5). Wated is wrong. In 2009, for example, four
years after *Booker*, this Court rejected what it char-
acterized as "a challenge to the extent of the district
court's downward departure under § 5K1.1," finding
"we lack jurisdiction to review" it. *United States* v.
*Reyes*, 308 F. App'x at 518. *See also United States* v.
*Stinson*, 465 F.3d at 114 ("we have held in the post-
*Booker* sentencing regime that a refusal to down-

17

Here, Judge Cote did not misunderstand her authority to depart. In fact, she imposed a below-Guidelines sentence. Nor was the sentence imposed in violation of the law, as Wated's counsel conceded at the conclusion of the sentencing. (Wated A. 93-94). Thus, there is no basis for this Court even to review the extent of Judge Cote's departure pursuant to Section 5K1.1, much less to find that she committed procedural error. In any case, the mere fact that Judge Cote chose not to give greater weight to the cooperation and the Government's Section 5K1.1 letter does not amount to a procedural error under this Court's precedent. *See, e.g.*, *United States* v. *Morillo*, 540 F. App'x 63, 65 (2d Cir. 2013) ("That [the district court] chose not to give greater weight to the cooperation and the 5K1.1 letter does not rise to the level of an error or an 'abuse of discretion,' or make the sentence procedurally unreasonable.").

Wated's additional procedural arguments fare no better. First, Wated contends that Judge Cote failed to follow "the few procedural requirements" of Section 5K1.1 and Section 3553(e) of Title 18, United States Code, by not discussing the factors listed in Section 5K1.1 on the record. (Wated Br. 19-20). But there is "no requirement that the court mention the required factors" in imposing sentence, "much less explain how

_____

wardly depart is generally not appealable, and that review of such a denial will be available only when a sentencing court misapprehended the scope of its authority to depart or the sentence was otherwise illegal" (internal quotation marks omitted)).

18

each factor affected the court's decision." *United States* v. *Banks*, 464 F.3d at 190. Wated points to nothing in the record indicating the Judge Cote failed to consider the required factors.

Second, Wated next argues that "[n]othing in the Sentencing Guidelines or sentencing principles in general calls for the more punitive treatment of supposed 'serial cooperators,'" and that Judge Cote therefore should not have considered this aspect of Wated's background. (Wated Br. 21). In support of this claim, Wated argues that "it is hardly unusual for defendants with more serious criminal histories to also have more substantial assistance to offer." (Wated Br. 21). But the fact that Section 5K1.1 does not exclude from consideration defendants with substantial criminal histories does not mean that a sentencing court should not consider a defendant's repeated requests for leniency based on cooperation as weighing in favor of a more serious sentence. The Guidelines themselves support such a finding. For example, in the analogous context of a defendant who receives a lenient sentence in connection with an underlying offense, but then violates the terms of supervised release, the Guidelines expressly advise that the violation may warrant an upward departure. *See*, *e.g.*, U.S.S.G. § 7B1.4, comment. (4); *United States* v. *Verkhoglyad*, 516 F.3d 122, 129-30 (2d Cir. 2008). Thus, the fact that Wated received lenient sentences due to his cooperation in connection with his prior convictions was a fact that Judge Cote appropriately found weighed in favor of a more serious sentence.

19

Third, Wated argues that even if Judge Cote could permissibly have considered Wated's prior lenient sentences, Judge Cote erred in determining that Wated had, in fact, cooperated in the past because, Wated asserts, this conclusion was based solely on "the length of the sentences Mr. Wated received." (Wated Br. 21-22). But Wated's own counsel, at sentencing, stated that "Mr. Wated has, in the past, committed crimes, cooperated with the government and [been] given the benefit of that cooperation, and then committed crimes again." (Wated A. 85). Thus, Judge Cote did not rely solely on "vague appearances" in concluding that Wated had cooperated in connection with his past convictions, as Wated now argues. (Wated Br. 22). Rather, Judge Cote's conclusion that Wated had cooperated in the past was confirmed at sentencing by Wated's own counsel. Thus, Judge Cote's conclusion that Wated had cooperated in the past was not erroneous at all. *See United States* v. *Sisti*, 91 F.3d 305, 312 (2d Cir. 1996) ("The sentencing court's discretion is largely unlimited either as to the kind of information it may consider, or the source from which it may come." (internal alterations and quotation marks omitted)).

Fourth, Wated argues that his sentence was procedurally unreasonable because Judge Cote did not sufficiently state the reasons for the extent of her departure. (Wated Br. 28). But Judge Cote could not have been clearer in stating that the extent of her departure—27 months below the low end of the Guidelines range—was driven by the fact that, on the one hand, Wated had cooperated with the Government, which deserved "some credit," but on the other hand,

20

Wated had "a very serious criminal record in terms of the pattern" of "violations of the law" followed by co-operation, which he appeared to view as a "get out of jail free card." (Wated A. 92). Judge Cote thus adequately explained the reasons behind the extent of her downward departure. *See United States* v. *Goffi*, 446 F.3d 319, 321 (2d Cir. 2006) (district court's "brief explanation" that the sentence was necessary due to "the criminal conduct that gave rise to the violation and the need to protect society" satisfied the oral explanation requirement in § 3553(c)(2)).

Even if Judge Cote "failed to fulfil the 'open court' requirement," moreover, Judge Cote still did not commit plain error, because Judge Cote expressly adopted the Presentence Report, and the below-Guidelines sentence she imposed was adequately supported by the factual findings set forth in that Report. *See United States* v. *Espinoza*, 514 F.3d 209, 212 (2d Cir. 2008) (per curiam) (holding that a district court's "failure to satisfy the open court requirement of § 3553(c) . . . does not constitute 'plain error' if the district court relies on the PSR, and the factual findings in the PSR are adequate to support the sentence").

Fifth, in support of his claims of procedural error, Wated repeatedly cites *United States* v. *Richardson*, 521 F.3d 149 (2d Cir. 2008) (Wated Br. 24, 28, 29), but the present case bears little resemblance to that one. In that case, the district court—based on the Government's motion under 18 U.S.C. § 3553(e) and Section 5K1.1—imposed a sentence of time served, or 464 days, on a defendant who otherwise faced a stat-

21

utory mandatory minimum sentence of 20 years. In explaining the sentence, the district court stated only that "I have reviewed and considered all the pertinent information including but not limited to the presentence investigation report, submissions by counsel, the factors outlined in 18 U.S.C. Section 3553 and the sentencing guidelines." *United States* v. *Richardson*, 521 F.3d at 155. The Government asked the district court what calculation it had used to reach that sentence, to which the district court responded that the sentence was "[b]ased on all the circumstances in the case and the motion by the government." *Id.* at 156. Noting the differences between a motion under 18 U.S.C. § 3553(e) (permitting a sentence below the mandatory minimum) and Section 5K1.1 (permitting a below-Guidelines sentence), this Court remanded for resentencing, finding that "[i]n the absence of any explanation by the District Court regarding the method employed in applying the two pertinent provisions relating to assistance, we are unable to say whether the sentence imposed . . . was procedurally reasonable." *Id.* at 158.

The Court's decision in *Richardson* does not support Wated's claims of procedural error. As an initial matter, due to the Government's timely objection in *Richardson,* the procedural reasonableness of the sentence there was reviewed for abuse of discretion, whereas here this Court's "review is limited to the more deferential plain error standard." *United States* v. *Palma*, 560 F. App'x 94, 95 n.* (2d Cir. 2014) (distinguishing *Richardson* on this basis). Further, the district court in *Richardson* simply stated that it had reviewed the pertinent sentencing factors, without

22

providing any substantive justification for the sentence. In contrast, here, Judge Cote specified that the 60-month sentence was based on "the assistance [Wated] gave to the government" and her finding, based on Wated's history and characteristics, that a "substantial term of imprisonment" was necessary to ensure that Wated "stop[ped] committing crimes." (Wated A. 92). *Richardson* thus provides scant support for Wated's claims of procedural error.

In sum, Wated's claims of procedural error are unfounded. At a minimum, they provide no basis for a finding of plain error. Accordingly, they should be rejected.

## 2. Wated's Sentence Was Substantively Reasonable

Wated's challenge to the substantive reasonableness of his sentence is likewise unconvincing. Wated argues that his sentence was substantively unreasonable because Judge Cote's finding that Wated viewed cooperation as a "get out of jail free card" does not "carry the weight required to justify the imposition of some forty extra months of punishment beyond what the government, who knew best the value of the cooperation, thought appropriate." (Wated Br. 30). But the Government, at sentencing, did not advocate for a sentence of 20 months, as Wated suggests. Rather, the Government merely stated at one point that Judge Cote would be "justified" in giving a sentence below the 21-month sentence another defendant received. (Wated A. 84; Wated Br. 16).

23

In any event, the mere fact that Wated believes that Judge Cote should have given more weight to his cooperation and less weigh to his criminal history does not make his sentence substantively unreasonable. *See United States* v. *Fernandez*, 443 F.3d at 34 ("[T]he requirement that the sentencing judge consider a § 3553(a) factor that may cut in a defendant's favor does not bestow on the defendant an entitlement to receive any particular 'credit' under that factor"); *see also United States* v. *Pope*, 554 F.3d at 246-47 (this Court "will not second guess the weight (or lack thereof) that the judge accorded to a given factor or to a specific argument made pursuant to that factor." (internal quotation marks omitted)); *Fernandez*, 443 F.3d at 27 ("The weight to be afforded any given argument made pursuant to one of the § 3553(a) factors is a matter firmly committed to the discretion of the sentencing judge and is beyond [appellate] review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented.").

Wated also argues that his sentence is substantively unreasonable "when compared to the sentences imposed on the dozens of other defendants in this case." (Wated Br. 30-31). This argument is grounded in 18 U.S.C. § 3553(a)(6), which addresses "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Wated's reliance on this provision is misplaced: "[S]ection 3553(a)(6) . . . does not require a district court to consider disparities between co-defendants," but rather requires only that "a district court . . . consider nationwide sentence disparities." *United States* v. *Frias*, 521 F.3d 229, 236

24

(2d Cir. 2008). Thus, "even leaving aside the difficulties of meaningful comparison among co-defendants, the district court was not required to consider" Wated's "codefendants' sentences" when determining his sentence. *United States* v. *Ukrainsky*, — F. App'x —, 2015 WL 525989, at *3 (2d Cir. 2015).

Further, "[a] reviewing court's concern about unwarranted disparities is at a minimum when a sentence is within the Guidelines range," because the Sentencing Commission considered the need to avoid unwarranted disparities when setting the Guidelines ranges. *United States* v. *Irving*, 554 F.3d 64, 76 (2d Cir. 2009) (internal quotation marks omitted). Here, the below-Guidelines sentence Wated received minimizes any concern about unwarranted nationwide disparities.

On the whole, this case is no different from the "overwhelming majority" of cases in which a Guidelines sentence—indeed, a sentence substantially below the applicable Guidelines range—falls "comfortably within the broad range of sentences that would be reasonable." *Fernandez*, 443 F.3d at 27. It certainly cannot be said to be among "those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States* v. *Rigas*, 583 F.3d at 123.

Accordingly, Wated's sentence, which was both procedurally and substantively reasonable, should not be disturbed.

25

**POINT II**

**Judge Cote Properly Included the Obstruction of Justice Enhancement in Paulino's Guidelines Calculation**

Paulino claims that Judge Cote erred by imposing a Guidelines enhancement for obstruction of justice based on Paulino's flight to Panama following his guilty plea, principally because Paulino did not ultimately miss any court appearances as a result of his flight. This argument has no traction. Paulino's flight to Panama was a bold attempt to avoid being sentenced, which failed only because Paulino was arrested in Panama and transported back to the United States in advance of his sentencing. The fact that Paulino's effort to obstruct justice was ultimately unsuccessful, however, is irrelevant to the analysis of the obstruction of justice enhancement, because that enhancement applies equally to successful and unsuccessful attempts at obstruction. Accordingly, Judge Cote acted properly in including this enhancement in Paulino's Guidelines calculation.

**A.   Relevant Facts**

Following his guilty plea, Paulino remained on release pending sentencing. One of the conditions of that release was that his travel was restricted to the Southern and Eastern Districts of New York. (Paulino PSR at 3, Release Status). Another condition was that he was subject to home detention with electronic monitoring. (Paulino PSR at 3, Release Status). On July 27, 2013, one week after he had pleaded guilty, Paulino removed the electronic monitoring bracelet

26

he was wearing as a condition of his release and fled
the jurisdiction. (Paulino PSR ¶ 62). On August 3,
2013, Paulino was arrested in Panama City, Panama,
and expelled back to the United States. (Paulino PSR
¶ 62).

In advance of Paulino's sentencing, the Probation
Office prepared the Presentence Report. The Proba-
tion Office determined that Paulino's Guidelines of-
fense level was 26, that his Criminal History Catego-
ry was I, and that his Guidelines range was therefore
63 to 78 months' imprisonment. (Paulino PSR ¶ 172).
In calculating Paulino's offense level, the Probation
Office included a two-level increase, pursuant to
U.S.S.G. § 3C1.1, because Paulino willfully obstruct-
ed justice by fleeing the jurisdiction on July 17, 2013.
(Paulino PSR ¶ 139). The Probation Office also de-
clined to reduce Paulino's offense level for acceptance
of responsibility, pursuant to U.S.S.G. § 3E1.1, be-
cause of Paulino's obstruction of justice. (Paulino PSR
¶ 141).

In his sentencing submission, in pertinent part,
Paulino opposed the obstruction enhancement on the
ground that he "did not have the requisite state of
mind" for his conduct "to qualify as obstructive,"
where his flight was "an extreme example of an ina-
bility to exercise adequate judgment based on a re-
cently diagnosed but longstanding chronic depression
and Alcohol Abuse Disorder." (Paulino A. 11 (Docket
Entry 820 at 3 & n.2)). In its own submission, in per-
tinent part, the Government argued that the obstruc-
tion enhancement was appropriate because that en-
hancement applies where a defendant intentionally

27

flees the jurisdiction, regardless of the specific rea-
sons for that flight. (Paulino A. 12 (Docket Entry 799
at 4)).

On January 24, 2014, the parties appeared before
Judge Cote for sentencing. (Paulino A. 54-100). In
pertinent part, Judge Cote stated, "I have read the
parties' submissions with respect to the obstruction of
justice enhancement and the loss of acceptance-of-
responsibility points, because of the flight of the de-
fendant. I'm happy to rule or I'm happy to give the
parties an additional opportunity to be heard."
(Paulino A. 67). Paulino's counsel responded that she
had "nothing further to add with respect to those two
issues." (Paulino A. 68). After Paulino's counsel de-
clined to make any further argument, Judge Cote
ruled that the obstruction enhancement applied.
(Paulino A. 68). Judge Cote explained that a defend-
ant's "intentional flight from judicial proceedings"
warrants the obstruction enhancement "regardless"
of a defendant's "reason for desiring to flee." (Paulino
A. 68).

In this case, Judge Cote further explained, Pauli-
no "intentionally cut off his ankle bracelets, got on a
bus, got on a plane and fled t[he] country after his
plea of guilty, knowing he had to appear here in court
for sentence," which warranted the obstruction en-
hancement. (Paulino A. 69). Judge Cote also found,
"[i]f I were required to find a purpose beyond that, I
would find that the purpose was to avoid being sen-
tenced, and I don't understand there to be any dis-
pute about my specific findings there." (Paulino
A. 69). As for Paulino's arguments regarding his

28

"state of mind as a whole and his substance abuse and depression," Judge Cote stated that she would consider these factors "in deciding what the appropriate sentence is." (Paulino A. 69). Based in part on her finding that the obstruction enhancement applied, Judge Cote determined that Paulino's offense level was 28, which, in Criminal History Category I, resulted in a Guidelines range of 78 to 97 months' imprisonment. (Paulino A. 69-70).[4]

At the conclusion of the proceeding, Judge Cote sentenced Paulino principally to an aggregate term of 78 months' imprisonment, at the low end of the applicable Guidelines range. (Paulino A. 97).

## B. Applicable Law

An enhancement for obstruction of justice is subject to a mixed standard of review on appeal. *See generally United States* v. *Savoca*, 596 F.3d 154, 158 (2d Cir. 2010). A sentencing court's findings of fact must be accepted unless they are clearly erroneous. *See, e.g.*, *United States* v. *McKay*, 183 F.3d 89, 92 (2d Cir. 1999); *United States* v. *Cassiliano*, 137 F.3d 742, 745 (2d Cir. 1998); *United States* v. *Fernandez*, 127 F.3d 277, 283 (2d Cir. 1997). However, a ruling that established facts constitute obstruction of justice under the

——————

[4] This range was different from the range calculated by the Presentence Report because that range included a safety-valve reduction that Judge Cote found did not apply. (Paulino PSR ¶ 136; Paulino A. 64-65).

29

Guidelines is a matter of legal interpretation and is reviewed *de novo*. *See United States* v. *Lincecum*, 220 F.3d 77, 80 (2d Cir. 2000); *United States* v. *McKay*, 183 F.3d at 92; *United States* v. *Fernandez*, 127 F.3d at 283.

The Guidelines authorize a two-level increase in a defendant's offense level:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

U.S.S.G. § 3C1.1. "Obstructive conduct can vary widely in nature, degree of planning, and seriousness." *Id.*, comment. (n.3). The Guidelines set out a nonexhaustive list of examples of the kinds of conduct to which the obstruction adjustment applies, including "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding." *Id.*, comment. (n.4(E)). "[T]he conduct to which this adjustment applies is not subject to precise definition." *Id.*, comment. (n.3).

Notwithstanding the difficulty in defining the contours of the obstruction enhancement, myriad cases have confirmed that failure to appear at judicial pro-

30

ceedings, escape from custody, and similar conduct warrant an enhancement under Section 3C1.1. *See, e.g.*, *United States* v. *Feldman*, 647 F.3d 450, 464-65 (2d Cir. 2011) (affirming obstruction enhancement where defendant fled to the Philippines after pleading guilty to one fraudulent scheme, thereby obstructing the investigation and prosecution of a second scheme); *United States* v. *Carty*, 264 F.3d 191, 194-95 (2d Cir. 2001) (per curiam) (affirming obstruction enhancement where defendant fled to and remained in the Dominican Republic in order to avoid sentencing); *United States* v. *Labella-Szuba*, 92 F.3d 136 (2d Cir. 1996) (failure to appear at a judicial proceeding is sufficient for an obstruction enhancement); *United States* v. *Loeb*, 45 F.3d 719, 722 (2d Cir. 1995) (affirming obstruction enhancement where defendant fled jurisdiction and remained a fugitive for 39 days); *United States* v. *Defeo*, 36 F.3d 272,276 (2d Cir. 1994) ("[f]light from pretrial services between conviction and sentencing warrants an obstruction enhancement").

Moreover, because "the enhancement applies whether or not the defendant successfully obstructed justice," *United States* v. *Keats*, 937 F.2d 58, 67 (2d Cir. 1991), the question of whether a defendant's "obstructive conduct was ultimately successful is . . . irrelevant to the applicability of the Guideline," *United States* v. *Irabor*, 894 F.2d 554, 556 (2d Cir. 1990).

Typically, "an enhancement under § 3C1.1 is appropriate only if the district court makes a finding that the defendant had the 'specific intent to obstruct justice, *i.e.*, that the defendant consciously acted with

31

the purpose of obstructing justice.'" *United States* v. *Woodard*, 239 F.3d 159, 162 (2d Cir. 2001) (quoting *United States* v. *Zagari*, 111 F.3d 307, 328 (2d Cir. 1997)). There are, however, two established exceptions to this rule. First, "certain conduct, such as intentionally failing to appear as required at judicial proceedings, is so inherently obstructive of the administration of justice that it is sufficient that the defendant willfully engaged in the underlying conduct, regardless of any additional purpose." *United States* v. *Reed*, 88 F.3d 174, 178 (2d Cir. 1996); *accord United States* v. *Feldman*, 647 F.3d at 464; *see also United States* v. *Labella-Szuba*, 92 F.3d at 139 ("regardless of whether defendant acted with specific purpose of obstructing the administration of justice, the fact that she consciously failed to appear at a judicial proceeding is sufficient for an enhancement"); *United States* v. *Aponte*, 31 F.3d 86, 88 (2d Cir. 1994) (intentional flight from judicial proceedings is inherently obstructive). Second, where the underlying facts regarding the defendant's conduct are undisputed or have been resolved by the court, and the "inescapable" conclusion from those facts is that the defendant must have acted with obstructive intent, no specific finding regarding the defendant's mental state is necessary. *See, e.g.*, *United States* v. *Cassiliano*, 137 F.3d at 747 (defendant contacted principal target of investigation and alerted him to the criminal investigation; "once calls were found to have been made for those purposes, the conclusion that there was an intent to obstruct is virtually inescapable"); *see also United States* v. *Feliz*, 286 F.3d 118, 121 (2d Cir. 2002) (no further finding necessary when defendant engaged in a category

32

of conduct supporting the "virtually inescapable" conclusion that he acted with intent to obstruct justice).

## C. Discussion

Measured against these standards, Judge Cote's application of the obstruction of justice enhancement was entirely appropriate and fully supported by sufficient findings. Paulino argues that Judge Cote did not make a sufficiently "reviewable finding that Paulino fled the jurisdiction with the intent of interfering with a judicial proceeding." (Paulino Br. 18). But in ruling on the proposed enhancement, Judge Cote specifically found that Paulino "intentionally cut off his ankle bracelets, got on a bus, got on a plane and fled t[he] country after his plea of guilty, knowing he had to appear here in court for sentence," and that he did so in order to "avoid being sentenced." (Paulino A. 69). These findings went beyond what is required where a defendant's actions, like Paulino's, are inherently obstructive. *See, e.g.*, *United States* v. *Reed*, 88 F.3d at 178. Paulino identifies no clear error in these factual findings, and his argument that Judge Cote failed entirely to make sufficient findings is unsupported by this record.

Paulino also challenges Judge Cote's conclusion that these facts constitute obstruction of justice under the Guidelines on the ground that he "missed no Court appearance." (Paulino Br. 18). But Paulino missed no court appearance only because he was arrested in Panama and returned to the United States. (Paulino PSR at 3, Release Status). The fact that Paulino ultimately attended his sentencing—while

33

being held in custody—does not alter the conclusion that he *attempted* to obstruct justice by fleeing to Panama. As this Court has explained, because Section 3C1.1 of the Guidelines expressly applies to *attempts* to obstruct justice, the question of whether a defendant's obstructive conduct was ultimately successful is "irrelevant to the applicability of the Guideline." *United States* v. *Irabor*, 894 F.2d at 556. Accordingly, the fact that Paulino's effort to avoid being sentenced was ultimately unsuccessful provides no basis to question the application of the obstruction of justice enhancement here. *See id.*; *see also United States* v. *Abuhouran*, 162 F.3d 230, 234 (3d Cir. 1998) (upholding obstruction enhancement based on defendant's "bold breaking of the bracelet and brazen trip to Kennedy [airport]" in an effort to "prevent . . . the judicial imposition of sentence," and finding irrelevant the fact "[t]hat his efforts were, at the last minute, foiled").

Paulino's challenge to Judge Cote's application of the enhancement also fails because this Court has held that "[f]light from pretrial services between conviction and sentencing warrants an obstruction enhancement," regardless of whether the defendant ultimately attends his or her sentencing. *United States* v. *Defeo*, 36 F.3d at 276. Specifically, in *Defeo*, this Court upheld a district court's application of the obstruction of justice enhancement where the defendant failed to report to pretrial services for four months between the defendant's conviction and sentence. *Id.* The defendant in *Defeo* argued on appeal that "the obstruction-of-justice adjustment was inappropriate because her fugitive status did not delay sentencing."

34

*Id.* But this Court rejected that argument, holding that flight from pretrial services alone justifies the enhancement. *Id.* at 276-77. Here, Paulino brazenly violated the conditions of his release by cutting off his ankle bracelet and fleeing the country. (Paulino A. 69). Thus, in accordance with *Defeo*, the fact that Paulino "missed no Court appearance," as he asserts (Paulino Br. 18), is immaterial because flight from pretrial services between conviction and sentencing alone is sufficient to justify the enhancement.

In contending otherwise, Paulino relies principally on *United States* v. *Woodward*, 239 F.3d 159 (2d Cir. 2001), but that reliance is misplaced. In that case, the defendant violated the terms of his release by traveling from New York to New Jersey and Pennsylvania, where he was ultimately arrested for drunk driving. *Id.* at 160. This Court found that this conduct was not "inherently obstructive," because it was "not self-evident" that the defendant "acted with the specific intent to obstruct or impede the administration of justice." *Id.* at 163. This Court also found that the district court did not make a sufficient finding that the defendant "left the jurisdiction with the intent to miss a court appearance or to otherwise obstruct or impede the administration of justice." *Id.* at 162 (internal alterations and quotation marks omitted). As pertinent here, *Woodward* simply stands for the unremarkable proposition that a violation of a condition of pretrial release—such as a travel restriction—cannot, without more, establish the basis for an obstruction enhancement.

35

Here, however, Paulino did not simply fail to abide by a condition of his release by traveling to a neighboring state. Rather, just seven days after he pleaded guilty, Paulino cut his ankle bracelet and fled to Panama. This conduct was far more obstructive than the conduct in *Woodward*. For example, in *United States* v. *Abuhouran*, 162 F.3d 230, in which a defendant cut his monitoring bracelet and traveled to Kennedy Airport, where he was arrested at the ticket counter, the Third Circuit held that "[a] more severe obstruction of justice can scarcely be imagined," *id.* at 234. The facts of the present case present an even more severe obstruction of justice than in *Abuhouran*, where Paulino did not get stopped at the airport ticket counter, but succeeded in traveling all the way to Panama. Paulino's reliance on *Woodward* thus does not advance his argument.

For all of the foregoing reasons, Judge Cote did not err in including an obstruction of justice enhancement in Paulino's Guidelines calculation.

## POINT III

### Paulino's Claims of Ineffective Assistance of Counsel Are Not Ripe for Consideration

Paulino contends that his counsel was ineffective because counsel failed to pursue safety valve relief and failed to object to the obstruction of justice enhancement at sentencing (notwithstanding counsel's objection to this enhancement in Paulino's sentencing submission (Paulino A. 11 (Docket Entry 820 at 3 & n.2)). (Paulino Br. 11-15). These claims—which are baseless—are nevertheless unripe for review in this

36

direct appeal. Paulino has made factual allegations regarding his lawyer's performance, but cites no support for them. (Paulino Br. 15). Because the record is not developed, consideration of these claims should be deferred for consideration as part of a motion under 28 U.S.C. § 2255, should Paulino choose to file one.

When faced with a claim of ineffective assistance of counsel on direct appeal, this Court may: "(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary fact finding; or (3) decide the claim on the record before" the Court. *United States* v. *Morris*, 350 F.3d 32, 39 (2d Cir. 2003). Ordinarily, "a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" of counsel. *Massaro* v. *United States*, 538 U.S. 500, 505 (2003). However, where the record is sufficiently developed on direct appeal, this Court should address an ineffective assistance claim if its "resolution is beyond any doubt or to do so would be in the interest of justice." *United States* v. *Khedr*, 343 F.3d 96, 100 (2d Cir. 2003) (citation and internal quotation marks omitted).

Here, Paulino argues that his prior attorney was ineffective in representing him during his plea and sentencing proceedings. Specifically, Paulino claims that his counsel did not seek a safety valve reduction notwithstanding his requests that counsel do so, and failed to renew Paulino's objection at sentencing to the obstruction of justice enhancement. (Paulino Br. 11, 15). Paulino raises these claims for the first

37

time on appeal, and neither the Government nor prior defense counsel has had the opportunity to address Paulino's allegations in the District Court. Under the circumstances, these claims should be deferred for later consideration by the District Court.

## CONCLUSION

**The judgments of conviction should be affirmed.**

Dated:    New York, New York
April 13, 2015

Respectfully submitted,

PREET BHARARA,
*United States Attorney for the Southern District of New York, Attorney for the United States of America.*

RUSSELL CAPONE,
BRIAN A. JACOBS,
*Assistant United States Attorneys, Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B). As measured by the word processing system used to prepare this brief, there are 8,593 words in this brief.

PREET BHARARA,
*United States Attorney for the*
*Southern District of New York*

By: BRIAN A. JACOBS,
*Assistant United States Attorney*